UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DAVID CARTER SR.,

                Plaintiff,

    v.

CORRECTION OFFICER MICHAEL SHEPPERSON,

               Defendant.

**MEMORANDUM AND ORDER**

19-CV-163 (LDH) (LB)

---

DAVID CARTER SR.,

                Plaintiff,

    v.

CORRECTION OFFICER MAXWELL, ET AL.,

                Defendants.

19-CV-322 (LDH) (LB)

---

LaSHANN DeARCY HALL, United States District Judge:

    Plaintiff David Carter Sr., proceeding pro se, asserts claims across two complaints against Defendants Officer Michael Shepperson, Officer Tyree Maxwell, Officer John Puglisi, Officer Braulio Mercedes, and Captain Denise Carter pursuant to 42 U.S.C. § 1983 for violations of his First, Fourth and Eighth Amendment rights guaranteed by the United States Constitution.[1]  By orders dated February 7, 2019, and February 8, 2019, Plaintiff was granted leave to proceed in forma pauperis ("IFP") as to each complaint.  Defendants each move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaints in their entirety for failure to state a claim.

---

[1] In the complaints, Plaintiff named Shepperson as "Shepard," and Puglisi as "Puluzzi."  (Compl. at 1, 19-CV-00163, ECF No 1; Compl. at 1, 19-CV-322, ECF No. 1.)

## BACKGROUND[2]

Plaintiff claims a series of retaliatory actions after he reported in writing to Captain Sapp, a non-party, that officers were deliberately withholding his food and had assaulted him. (Pl.'s Aff. Opp'n Def.'s Mot. Dismiss ("Pl.'s Aff.") 2, 19-CV-163, ECF No. 49-1.)

On December 25, 2018, Officer Maxwell deliberately denied Plaintiff breakfast. (Compl. at 4, 19-CV-322, ECF No. 1.) When Plaintiff was ultimately served breakfast, it consisted of hard bread that had been sitting out uncovered. (*Id.*) Plaintiff told Officer Maxwell that he would complain about his breakfast to which Officer Maxwell responded, "We are going to get you when you come out for [a] shower, but first we are going to starve you, kill your mother, and throw you down the stairs while hand-cuffed." (*Id.*) Three officers, including Officers Mercedes and Puglisi, then denied Plaintiff a shower until December 29. (*Id.*)

On December 29, 2018, after Plaintiff left the shower, Officers Puglisi and Mercedes attempted to "throw [Plaintiff] down stairs" while he was handcuffed, but Plaintiff resisted. (*Id.*) The officers held Plaintiff "against [an] iron stairwell partition and knifed [him] in the back with a nightstick." (Pl.'s Aff. 3.) Despite this alleged attack, Captain Carter refused to remove Plaintiff from "this area." (Compl. at 4, 19-CV-322.) On December 31, 2018, Plaintiff was again denied a shower. (*Id.*) On that same date, Officer Mercedes allowed another inmate to go to Plaintiff's cell, kick his door, and threaten that if Plaintiff complained, Plaintiff would be slashed in his face. (*Id.*)

---

[2] The following facts are taken from the complaints and Plaintiff's opposition papers, and are assumed to be true for the purposes of this memorandum and order. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Aponte v. Buono*, No. 11-CV-1077 (CBA) (MDG), 2011 WL 6812924, at *3 (E.D.N.Y. Dec. 28, 2011) (considering new facts alleged in a pro se plaintiff's opposition papers on a motion to dismiss because the new factual allegations "effectively amended" complaint).

On or before January 2, 2019, Plaintiff spoke again to Captain Sapp, as well as several investigators, presumably about the December 2018 incidents. (Pl.'s Aff. 3.) Plaintiff alleges that immediately thereafter, Officer Shepperson deliberately poisoned his food, or alternatively coerced a pantry worker to taint his food. (Compl. at 4, 19-CV-163; Pl.'s Aff. 5.) As alleged, on January 2, 2019, Officer Shepperson approached Plaintiff's cell with a copy of an "inmate voluntary statement form," which Plaintiff had filed against Captain Sapp. (Compl. at 4, 19-CV-163, ECF No. 1.) Officer Shepperson told Plaintiff that Plaintiff would have a "good meal" that evening and warned Plaintiff to "be careful" regarding his complaint. (*Id.*) When Plaintiff ate his meal, he tasted feces and bleach. (*Id.*) A pantry worker then pointed at Officer Shepperson and told Plaintiff, "he [Shepperson] has beef with you." (*Id.*) As a result of this tainted food, Plaintiff spit up blood for several hours, but his requests for medical care, including the provision of medication, were deliberately ignored. (*Id.*) Plaintiff received the requested medication the following morning. (*Id.*)

In addition to the above, Plaintiff alleges that Defendants denied Plaintiff his allotted one-hour of recreation time and phone privileges. (Pl.'s Opp'n Def's. Mot. Dismiss ("Pl.'s Opp'n") 3, 19-CV-322, ECF No. 60-1.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.

3

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right[s] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.  Consolidation

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). Of particular relevance here, cases may be consolidated where there are common questions of fact and law, even where there is no overlap in defendants. *See Jones v. Nassau Cty. Corr. Inst.*, 14-CV-1217 (JFB) (GRB), 2014 WL 1277908, at *3 (E.D.N.Y. Mar. 26, 2014) (Bianco, J.) ("[T]he fact that the defendants are

different in the two actions does not mean that the cases should not be consolidated."); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y.2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."). And, a district court need not wait for a motion to consolidate from the parties but may act to consolidate sua sponte. *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). In determining whether consolidation is appropriate, "[t]he trial court has broad discretion," *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990), and "should consider both equity and judicial economy," *Devlin*, 175 F.3d at 130. The "paramount" concern, however, is "for a fair and impartial trial." *Johnson*, 899 F.2d at 1285. In other words, "efficiency cannot be permitted to prevail at the expense of justice—consolidation should be considered when savings of expense and gains of efficiency can be accomplished *without sacrifice of justice*." *Devlin*, 175 F.3d at 130 (emphasis in original).

Here, there is no overlap in Defendants between 19-CV-322 ("Carter I") and 19-CV-163 ("Carter II"). Nevertheless, liberally construing Plaintiff's submissions together—including the complaints and opposition papers filed in both actions—Plaintiff has alleged a series of retaliatory incidents stemming from his reporting of potential constitutional violations to Captain Sapp. (*See, e.g.*, Pl.'s Aff. 2–3.) Plaintiff alleges that he complained to Captain Sapp that he was withheld food, and then he was subsequently again withheld food. (*Id.* 3.) Then, after Plaintiff complained again to Captain Sapp about the alleged assault by officers in the stairwell, Officer Shepperson is alleged to have contaminated his food. (*Id.*) The common question of fact, therefore, is whether the series of alleged constitutional violations were taken in retaliation for Plaintiff's use of the prison grievance process.

5

Defendants will not be prejudiced by consolidation. The motions to dismiss the complaints were fully briefed, and accordingly, Defendants had the opportunity to address every claim levied against each of them on the merits in their respective motions. To the extent Officer Shepperson might argue that he is prejudiced because absent consolidation, the claim against him would be barred by the PLRA three-strikes rule, that argument would fail. The Prison Litigation Reform Act ("PLRA") three-strikes rules is discussed in greater detail, *infra*. The Court notes here, however, that "Congress adopted the Prison Litigation Reform Act with the principal purpose of deterring frivolous prisoner lawsuits and appeals." *Tafari v. Hues*, 473 F.3d 440, 443 (2d Cir. 2007). The purpose of the PLRA is not to provide insulation to Defendants for wrongdoing. And, as further discussed, *infra*, given that the conduct complained of in Carter I is sufficient to qualify for the imminent danger exception, and that equity and judicial economy considerations weigh in favor of consolidation, the claim against Officer Shepperson will also survive.

In determining whether to consolidate these actions, the dates of the incidents and complaints are also relevant to the Court's consideration, particularly in light of Plaintiff's pro se status. The complaint in Carter I is dated December 31, 2018 and was received by the Court on January 11, 2019. (*See* Compl., 19-CV-322.) Carter I alleges a series of incidents that occurred between December 25, 2018, and December 31, 2018. (*Id.* at 4–5.) The complaint in Carter II is dated January 4, 2019, after the complaint in Carter I, but was received by the Court, on January 7, 2019. (Compl., 19-CV-163). Carter II complains about the food contamination incident. (*Id.* at 4.) The Court will assume Plaintiff mailed Carter I and Carter II on the date that Plaintiff signed each complaint—December 31, 2018, and January 4, 2019, respectively. Plaintiff, while a frequent filer, is a pro se litigant and therefore may have been unaware that he could have

amended the first complaint rather than file a second complaint on related facts just five days after his first complaint. And, had Plaintiff moved to amend the pleading in Carter II, dated December 31, 2018, to include the incidents complained in 19-CV-193, he would have been able to do so as a matter of right. *See* Fed. R. Civ. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course within 21 days after serving it."). On balance, the Court finds that the interests of justice are best served by consolidation. While no Defendants overlap between the two action, carrying these two actions forward as one enhances judicial economy, with no prejudice to any party. The cases are therefore consolidated and Carter I shall become the lead case.

## II.     Three-Strikes Rule

Where a plaintiff seeks leave to proceed IFP under the Prison Litigation Reform Act ("PLRA"), the court must determine whether he has demonstrated sufficient economic need to proceed without prepaying, in full, the court's filing fee of $400. 28 U.S.C. § 1915(a). The three-strikes provision of 28 U.S.C. § 1915 bars frequent filers from proceeding IFP if, at the time a plaintiff commences the action, he has already filed three or more previous actions that were dismissed as "frivolous, malicious, or for failure to state a claim on which relief may be granted."[3] *Chavis v. Chappius*, 618 F.3d 162, 167 (2d Cir. 2010) (quoting 28 U.S.C. § 1915(g)). The three-strikes provision was designed to "deter[] frivolous prisoner lawsuits and appeals" by "forcing prisoners to go through the same thought process non-inmates go through before filing a suit, *i.e.*, is filing this suit worth the costs?" *Tafari*, 473 F.3d at 443. Defendants argue that

---

[3] Section 1915(g) provides, in full: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

7

Plaintiff has accrued three strikes under the PLRA. (Def. Shepperson's Mem. Law. Supp. Mot. Dismiss ("Shepperson Mem.") 4–6, 19-CV-163, ECF No. 11; Defs. Maxwell et al. Mem. Law Supp. Mot. Dismiss ("Maxwell Mem.") 4–6, 19-CV-322, ECF No. 59.) They are correct.

Plaintiff has filed over 64 complaints across the Southern District of New York, the Eastern District of New York, and the Northern District of New York. *See Carter v. John Doe #1*, 20-CV-0576, ECF No. 13 at 3 n.1 (N.D.N.Y filed May 27, 2020) (recounting that an electronic search for Plaintiff's name on PACER revealed 64 complaints filed by Plaintiff). On May 27, 2016, the Honorable Loretta Preska found that Plaintiff accumulated three "strikes" under the PLRA, and was thereafter barred under § 1915(g) from filing IFP. *See Carter v. New York City John Doe Corr. Officer Male Hispanic*, 16-CV-3466, ECF No. 5 (S.D.N.Y. filed May 10, 2016) (ordering Plaintiff to show cause as to why the court should not vacate the order granting the IFP application, pursuant to the IFP statute's three-strikes provision); *id.* at ECF No. 6 (barring Plaintiff from filing IFP as he failed to respond to the order to show cause). An independent analysis by this Court finds that the three strikes cited by Judge Preska indeed qualify as strikes under the PLRA. *See Carter v. Doe I*, 12-CV-9278, ECF No. 16 (S.D.N.Y. filed Dec. 19, 2012) (dismissing for failure to state a claim upon which relief may be granted pursuant to § 1915(e)(2)(B)(ii)); *Carter v. Cuomo*, 11-CV-5705, ECF No. 4 (E.D.N.Y. filed Nov. 17, 2011) (dismissing for failure to state a claim upon which relief may be granted pursuant to § 1915A(b)(1)); *Carter v. Doe*, No. 05-CV-8432 (NRB), 2006 WL 2109461, at *3–4 (S.D.N.Y. July 26, 2006) (dismissing for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), as the action was time-barred and his claims were not subject to tolling).[4]

---

[4] The dismissal of *Carter v. Doe*, 2006 WL 2109461 based on the expiration of the statute of limitations constitutes a strike for purposes of § 1915(g). *See Akassy v. Hardy*, 887 F.3d 91, 95 (2d Cir. 2018) (rejecting argument that "the district court's [] statute-of-limitations-based dismissals should not be considered strikes"); *see also Carter v.*

However, this finding does not end the Court's inquiry. Section 1915(g) allows prisoners to "escape the three strikes rule where 'the prisoner is under imminent danger of serious physical injury.'" *Malik v. McGinnis*, 293 F.3d 559, 562 (2d Cir. 2002) (quoting 28 U.S.C. § 1915(g)). "For a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint—in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009). However, while "the feared physical injury must be serious," the Second Circuit has cautioned that "we should not make an overly detailed inquiry into whether the allegations qualify for the exception, because § 1915(g) concerns only a threshold procedural question, while separate PLRA provisions are directed at screening out meritless suits early on." *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010) (internal quotations omitted).

For the purposes of evaluating whether imminent danger exists, "the only relevant allegations are those in which [the plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment."[5] *Chavis*, 618 F.3d at 165. In *Chavis v. Chappius*, the Second Circuit considered a situation in which a prisoner who was barred from IFP under the three-strikes rule had demonstrated that he was under imminent danger at the time of filing the complaint. *Id*. There, the plaintiff initially claimed that eight officers severely beat him in retaliation for his filing grievances alleging prior misconduct by prison officials. *Id.* The attack came after the plaintiff had received a threat of physical abuse. *Id.* In a motion for leave to

---

*John Doe #1,* No. 20-CV-0576, ECF No. 13 at 4 n.3 (N.D.N.Y filed May 27, 2020) (applying *Akassy* in finding Plaintiff was barred from filing IFP in the Northern District of New York).

[5] For this reason, Plaintiff's complaints that he was denied a fulsome breakfast and showers for up to four days, denied recreation time, and denied access to the phone will not be considered in determining whether imminent danger exists. *See Antrobus v. Dapecevic*, 17-CV-5840 (KMK), 2018 WL 3242272, at *10 (S.D.N.Y. July 3, 2018) (declining to consider plaintiff's claims of blocked mail, blocked grievance procedure, blocked access to law libraries, and any other allegations that do not fit one of the three *Chavis* categories listed when evaluating imminent danger).

9

amend his complaint, which the district court denied, the plaintiff further alleged that after the beating, officers came to his cell twice to verbally assault him and intimidate him. *Id.* at 166. In finding that the district court abused its discretion by denying the plaintiff leave to amend his complaint, the Second Circuit indicated that the additional allegations taken with the initial complaint "would appear to be sufficient to allege imminent danger of serious physical injury." *Id.* at 170. The Court explained, "[a]n allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception." *Id.*

Here, Plaintiff's allegations relevant to the inquiry of imminent danger include that: (1) after Plaintiff informed Officer Maxwell that Plaintiff intended to file a complaint about his breakfast, Officer Maxwell threated Plaintiff with the statement, "We are going to get you when you come out for shower, but first we are going to starve you, kill your mother, and throw you down the stairs while hand-cuffed," (Compl. at 4, 19-CV-322); (2) Officers Puglisi and Mercedes attempted to throw Plaintiff down a flight of stairs and in the process, Plaintiff was thrown against an iron stairwell and knifed in the back with a nightstick, (*Id.* at 4–5; Pl.'s Aff 3.); (3) Officer Mercedes allowed another inmate to come to Plaintiff's cell, kick his door, and threaten Plaintiff that if he complained, he would be slashed in his face, (Compl. at 4, 19-CV-322); and (4) Officer Shepperson deliberately tainted or caused Plaintiff's food to be tainted with bleach and feces, and Plaintiff was subsequently denied medical treatment for his reaction to the contaminated food until the following morning. (Compl. at 4, 19-CV-163; Pl.'s Aff.)

In the face of a pro se litigant filing 64 complaints in the Second Circuit, and given the facts alleged, this is a close question. Plaintiff alleges little overlap between the correction

10

officers who committed the various harms and made threats against him. *See Antrobus v. Dapecevic*, 17-CV-5840 (KMK), 2018 WL 3242272, at *13 (S.D.N.Y. July 3, 2018) (declining to find imminent danger where Plaintiff was threatened "by persons who have shown no proclivity to follow through on those threats, and none of whom purportedly participated in [the] recent brutal beating"). And, certain threats had dissipated by the time he filed a complaint—*i.e.* he was denied medical care initially after eating tainted food but was then provided with the medication the following morning. However, the Court cannot ignore the Second Circuit's instruction that the Court should not make an "overly detailed inquiry into whether the allegations qualify for the exception." *Chavis*, 618 F.3d at 169. Plaintiff complains that he was threatened by one officer that he would be thrown down the stairs, and two other officers later acted on that specific threat, causing Plaintiff injury. Then, one of the officers who attempted to throw him down the stairs allowed another inmate to threaten him with specific physical violence if he complained. Defendants contention that all of the threats Plaintiff complains of had dissipated by the time he filed a complaint is not true. (Maxwell Mem. 5). There were several outstanding threats against Plaintiff when he filed the complaint—*i.e.* that an officer was going to starve Plaintiff and that an officer would allow an inmate to slash his face if he filed a complaint.

   Defendants further contend that the Court cannot find that there was imminent danger because the Court received Plaintiff's complaint in Carter I eleven days after the alleged last incident detailed in that complaint, and Plaintiff's complaint in Carter II was received on January 7, 2019, five days after the incident alleged in that complaint. (Maxwell Mem. 5; Shepperson Mem. 5.) In other words, Defendants argue that any threat had ceased by the time the Court received Plaintiff's complaint. However, as just established, while certain incidents, like the

11

alleged assault and alleged poisoning had ceased, Plaintiff complains that there were several outstanding threats against him.  Thus, the danger posed to Plaintiff had not dissipated.  *Cf. Antrobus*, 2018 WL 3242272, at *10 ("Plaintiff cannot claim imminent danger from events that occurred in the past, without allegations that they are ongoing or likely to continue in the future.").  And, the Second Circuit had indicated that courts must evaluate the imminent danger that existed at the time the initial complaint was filed.  *See Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (evaluating whether the imminent danger exception applied where the plaintiff filed an initial and amended complaint and finding that no imminent danger existed "at the time [the plaintiff] filed his initial complaint").

The Court therefore finds that Plaintiff has sufficiently alleged an ongoing pattern of acts to support a finding of imminent danger.  As Plaintiff satisfies the imminent danger exception to the three-strikes rule, Plaintiff can proceed on all claims in his complaints.  *Chavis*, 618 F.3d at 171–72 ("[A] plaintiff filing IFP on the basis of the imminent danger exception can proceed with all claims in her complaint[.]").

**III.   PLRA Exhaustion**

Defendants next argue that Plaintiff's claim should be dismissed as he has failed to exhaust his administrative remedies as required by the PLRA.  (Maxwell Mem. 6–8; Shepperson Mem. 6–7.)  The Court disagrees.

To be sure, exhaustion is mandatory under the PLRA.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  However, the PLRA's exhaustion requirement is not jurisdictional.  *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003).  Rather, "failure to exhaust is an affirmative defense under the PLRA," and the Supreme Court has accordingly held that inmates are not required to specially plead or demonstrate exhaustion in their complaints.  *Id.* at 216; *see also Ibarzabal v. Morgan Stanley DW, Inc.*, 333 F. App'x 605, 606–07 (2d Cir. 2009) (summary order) ("In

12

general we do not require plaintiffs to anticipate affirmative defenses in formulating a complaint."). Here, the lack of factual allegations regarding whether Plaintiff exhausted or qualifies for a textual exception to mandatory exhaustion cannot be used to support an inference that no such exception existed on a 12(b)(6) motion. *See Jones v. Sposato*, 16-CV-5121 (JFB) (GRB), 2017 WL 4023135, at *6 (E.D.N.Y. Aug. 22, 2017) (collecting cases), *report and recommendation adopted*, 16-CV-5121 (JFB) (GRB), 2017 WL 4023345 (E.D.N.Y. Sept. 11, 2017). And as such, Defendants' motion to dismiss on this ground fails.

**IV.    Section 1983 Claims**

As Plaintiff is pro se, he presents his claims narratively in his complaints and opposition papers. As discussed above, the Court must construe Plaintiff's claims liberally, and interpret his pleadings as raising the strongest arguments that they suggest. Accordingly, the Court has interpreted Plaintiff's various submissions as intending to bring: Eighth Amendment claims for food contamination, denial of medical care, and denial of breakfast, showers, recreation time, and phone privileges; a First Amendment retaliation claim; a Fourth Amendment excessive force claim; and a § 1983 conspiracy claim with respect to his excessive force and retaliation claims.

    **A.    Eighth Amendment**

        1.    Food Contamination

"It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). Officer Shepperson argues that Plaintiff has failed to allege personal involvement by Officer Shepperson in the alleged incident in which Plaintiff's food was tainted with bleach and feces, and the subsequent denial of medical care. (Shepperson Mem. 8–9.) It is true that Plaintiff's complaint is silent on Officer Shepperson's role in lacing Plaintiff's food with feces and bleach. However, in opposition, Plaintiff alleges that Officer

13

Shepperson deliberately poisoned his food, or alternatively coerced a pantry worker to taint his food. (Pl.'s Aff. 5.) Plaintiff has thus sufficiently alleged Officer Shepperson's personal knowledge and involvement.

Officer Shepperson further argues that the allegations that he tainted Plaintiff's food with bleach and feces or coerced a pantry worker to do so are too conclusory to survive a motion to dismiss. (Def. Shepperson Reply Mem. L. Supp. Mot. Dismiss ("Shepperson Reply") 3–4, ECF No. 50). The Court disagrees.

The Eighth Amendment prohibition against cruel and unusual punishment requires that prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). The Second Circuit has explicitly contemplated allegations similar to those alleged by Plaintiff in *Robles v. Coughlin*. There, the Second Circuit reversed the district's court dismissal of the complaint, and found that allegations that prison officials contaminated inmates' meals with "dust, rocks, glass and human waste" were sufficient to withstand dismissal. *Id.* at 16; *see also Poole v. Nassau Cty.*, 15-CV-2762 (JFB) (AKT), 2016 WL 1089411, at *6 (E.D.N.Y. Mar. 21, 2016) (denying motion to dismiss where plaintiff alleged that "he suffered food poisoning because he was served food that contained dead small ants and roaches."). Certainly, an allegation that Plaintiff's food was contaminated with feces and bleach is likewise sufficient to withstand dismissal.

Nonetheless, relying on two Northern District of New York cases, Officer Shepperson argues that Plaintiff's allegations are too conclusory to survive the motion. (Shepperson Reply 4.) Both cases are easily distinguishable. In *Brown v. Eagen*, the plaintiff alleged not just that his food was contaminated, but that such contamination included blood that was sealed in

14

packaged ketchup. 9:08-CV-0009 (TJM) (DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009). These claims, were also accompanied by "fantastical" claims, including, *inter alia*, that he was being given medicine contaminated with blood and feces, and intentionally infected with Hepatitis A. *Id.* at *9. In *Dorsey v. Fisher*, the court dismissed an Eighth Amendment claim based on allegations of contaminated food where the plaintiff alleged, "inmate porters laced his food with infected DNA or infected bodily fluids at the direction of DOCS officials and that DOCS supervisors rewarded them for doing so. No. 9:09-CV-1011 (GLS) (DEP), 2010 WL 2008966, at *7 (N.D.N.Y. May 19, 2010). There, the court found the claims "wholly unbelievable." *Id.* at *7–8. Here, Plaintiff's claims of tainted food are not fantastical nor wholly unbelievable. The Court has one allegation of tainted food that falls squarely within the bounds of plausible claims contemplated by the Second Circuit in *Robles*. Accordingly, Plaintiff's Eighth Amendment claim for contaminated food survives.

        2.        Denial of Breakfast, Showers, Recreation Time and Phone Privileges

Defendants argue that Plaintiff's various other complaints regarding the provision of hard bread for breakfast on one occasion, and denial of showers for four days, recreation time, and phone privileges are not cognizable.[6] (Maxwell Mem. 8-12; Maxwell Reply 1.) The Court agrees. *See Brooks v. NYC DOC Comm'r*, 14-CV-6283 (RRM) (CLP), 2016 WL 4530456, at *4 (E.D.N.Y. Aug. 29, 2016) (collecting cases for the proposition that lack of access to hot food for up to two weeks is insufficient to state claim for unconstitutional conditions of confinement); *id.* at *5 (collecting cases for the proposition that lack of access to showers for up to thirteen days is insufficient to state claim for deprivation of rights); *St. Louis v. McClain*, 3:18-CV-1590

---

[6] Defendants in Carter I state that Plaintiff is a pre-trial detainee and moved on these claims under the Fourteenth Amendment, rather than the Eighth Amendment. (Maxwell Mem. 8.) Plaintiff has not alleged that he is pre-trial, and his long filing history under the PLRA is an indication that he is not a pre-trial detainee. Accordingly, these claims are rightly evaluated under the Eighth Amendment.

15

(AWT), 2018 WL 6421060, at *4 (D. Conn. Dec. 5, 2018) (finding that, *inter alia*, alleged deprivations of phone and recreation privileges did not amount to cruel and unusual punishment). Accordingly, Plaintiff's Eighth Amendment claim based denial of breakfast, showers, recreation time, and phone privileges is dismissed.

### B. First Amendment Retaliation

To state a cognizable First Amendment retaliation claim, a plaintiff must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003). The filing of prison grievances is constitutionally protected. *Id.*

As set out above, Plaintiff alleges various instances of retaliation for filing a prison grievance, or complaint against correctional officers. Officer Shepperson fails to make any argument with respect to Plaintiff's retaliation claims against him. (*See* Shepperson Mem; Shepperson Reply.) The remaining Defendants merely address Plaintiff's retaliation claim in one sentence related to the imminent danger exception to the three-strikes rule. (Maxwell Reply 2.) They fail, however, to make any argument with respect to the merits of the retaliation claim. Accordingly, Plaintiff's First Amendment retaliation claim survives.

\* \* \*

Defendants make no arguments as to the claims regarding the Eighth Amendment claim for denial of medical care, the Fourth Amendment excessive force claim, or the § 1983 conspiracy claim. Accordingly these claims survive.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED with respect to the Eighth Amendment claims based denial of breakfast, showers, recreation time and phone

16

privileges. Defendants' motions to dismiss are DENIED as to all other claims. Plaintiff's First Amendment retaliation claim, Eighth Amendment claim based on contaminated food and denial of medical care, Fourth Amendment excessive force claim, and § 1983 conspiracy claims survive. Furthermore, Carter I and Carter II are hereby CONSOLIDATED and Case No. 19-CV-322 ("Carter I") shall become the lead case.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
November 16, 2020  LaSHANN DeARCY HALL
United States District Judge